J-S61044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
    :     PENNSYLVANIA
             v.     :
    :
NICHOLAS ALAN MYERS,     :
    :
           Appellant     :     No. 1273 WDA 2015

Appeal from the Judgment of Sentence March 24, 2015
in the Court of Common Pleas of Cambria County,
Criminal Division, No(s): CP-11-CR-0001261-2014;
CP-11-CR-0001262-2014; CP-11-CR-0001270-2014

BEFORE: PANELLA, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:         **FILED OCTOBER 24, 2016**

Nicholas Alan Myers ("Myers") appeals from the judgment of sentence imposed following his convictions of three counts each of burglary and criminal mischief, two counts each of theft by unlawful taking and receiving stolen property, and one count of criminal attempt (burglary). *See* 18 Pa.C.S.A. §§ 3502(a)(4); 3304(a)(5); 3921(a); 3925(a); 901(a). We affirm the convictions, vacate the sentence and remand for resentencing.

On February 16, 2014, the police arrived at the Summerhill Borough Fire Department and Summerhill Borough Municipal Building, which are approximately 100-200 feet apart, based upon reports of break-ins. Upon investigation, the police determined that the perpetrators had attempted to enter the fire station, but were unable to gain access; however, the perpetrators were able to access a two-story storage building located next to the fire station by prying open the door. The perpetrators also pried open

the door and entered the Summerhill Borough Municipal Building. The police also investigated a burglary at the South Fork Fire Department[1] on February 16, 2014, wherein the perpetrators forcibly pried open a door to gain access to the building and subsequently rummaged through several emergency vehicles. The police determined that numerous items had been stolen during the burglaries, including, *inter alia*, portable radios, chargers, metal gas cans, a cordless drill, a printer, a Keurig coffee maker, and a 32-inch Vizio television.

During an unrelated theft investigation, the police determined that Justin Hershberger ("Hershberger") was a person of interest in the burglaries. After obtaining consent to search the homes of Hershberger and his father, the police discovered some of the stolen items at each home.

Natalee Dryzal ("Dryzal"), who has a child with Myers, stated that at around midnight on February 16, 2014, Myers and Hershberger left Myers's mother's home together and returned a few hours later. When they returned, Hershberger placed an unopened bag in Myers's bedroom. After Myers's mother left the home, Myers and Hershberger opened the bag, which contained, *inter alia*, portable radios with yellow stickers on them. Myers and Hershberger indicated that they got the radios from the "fire hall," after they had a "problem with the first place." Dryzal also stated that she accompanied Hershberger when he attempted to sell a television.

---

[1] The South Fork Fire Department is approximately five miles from the Summerhill Borough Municipal Building.

The police arrested Hershberger and Myers. Myers was charged with numerous crimes in three separate Criminal Informations, 1261-2014, 1262-2014, and 1270-2014. The Commonwealth filed a Motion to consolidate the Criminal Informations. The trial court granted the Motion. Thereafter, the Commonwealth filed a Motion to consolidate the Myers and Hershberger cases into one trial. The trial court granted the Motion. Myers filed a pretrial Motion to sever his case from Hershberger's case, and to sever his three Criminal Informations. The trial court denied the Motion.

The matter proceeded to a jury trial in February 2015. After hearing the evidence, the jury found Myers guilty of the above-mentioned crimes.[2] The trial court sentenced Myers to an aggregate prison sentence of six to twelve years.[3] Myers filed a Post-Sentence Motion, which the trial court denied.

Myers filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Myers raises the following questions for our review:

I.    Whether the [t]rial [c]ourt erred in denying Myers'[s] Motions to Sever Co-defendant[]?

II.   Whether the [t]rial [c]ourt erred in denying Myers'[s] Motion to Sever Indictments?

---

[2] The trial court found Myers guilty of one count of criminal mischief, which was graded as a summary offense.

[3] Hershberger was convicted of numerous crimes and was also sentenced to six to twelve years in prison.

III.    Whether the [t]rial [c]ourt erred in denying Myers'[s] Motion for Judgment of Acquittal on [b]urglary [c]harges because [the] evidence was insufficient to find beyond a reasonable doubt that Myers entered the Summerhill Borough Municipal Building, Summerhill [Borough] Fire Department and South Fork Fire Department (No. 1262-2014[,] Count 1, No. 1261-2014[,] Count 1 and No. 1270-2014[,] Count 1, respectively)?

IV.    Whether the [t]rial [c]ourt erred in denying Myers'[s] Motion for Judgment of Acquittal on [t]heft by [u]nlawful [t]aking [c]harges because evidence was insufficient to support a finding beyond a reasonable doubt that Myers took or exercised unlawful control over movable property belonging to [the] Summerhill Borough Municipal Building and South Fork Fire Department (No. 1262-2014[,] Count 2 and No. 1270-2014[,] Count 3, respectively)?

V.    Whether the [t]rial [c]ourt erred in denying Myers'[s] Motion for Judgment of Acquittal on [the] [c]riminal [m]ischief to [t]angible [p]roperty [c]harge because [the] evidence was insufficient to support a finding beyond a reasonable doubt that Myers caused damage to or otherwise tampered with tangible property at [the] Summerhill [Borough] Fire Department and South Fork Fire Department (No. 1261-2014[,] Count 3 and No. 1270-2014[,] Count 2, respectively)?

VI.    Whether the [t]rial [c]ourt erred in denying Myers'[s] Motion for Judgment of Acquittal because [the] evidence was insufficient to support a finding beyond a reasonable doubt that Myers received, retained, disposed of, or otherwise received movable property belonging to Summerhill Borough Municipal Building and the South Fork Fire Department (No. 1262-2014[,] Count 3 and No. 1270-2014[,] Count 4, respectively)?

VII.    Whether the [t]rial [c]ourt erred in denying Myers'[s] Motion for Judgment of Acquittal on [c]riminal [a]ttempt to [c]ommit [b]urglary because evidence was insufficient to support a finding beyond a reasonable doubt that Myers, with intent to commit burglary of the Summerhill [Borough] Fire Department, took a substantial step

towards the commission of burglary (No. 1261-2014[,] Count 2)?

VIII. Whether the [t]rial [c]ourt erred in giving Myers illegal sentences by sentencing Myers on [the] [r]eceiving stolen [p]roperty, theft and [b]urglary charges when [the] [r]eceiving [s]tolen [p]roperty and [t]heft convictions merge with [the] [b]urglary convictions for sentencing purposes, and for sentencing Myers on an [a]ttempted [b]urglary charge when he was conficted on a [b]urglary charge stemming from the same occurrence?

Brief for Appellant at 3-4.

In his first claim, Myers contends that the trial court erred in denying his Motion to sever his case from Hershberger's case. *Id*. at 8. Myers argues that the jury was unable to separate the evidence with regard to the criminal offenses and defendants. *Id*. at 9. Myers points out that the crimes involved three separate locations; Hershberger hid items from the burglary at his and his father's homes; and there was no evidence to demonstrate Myers knew of the items found at these homes. *Id*. Myers claims that he was prejudiced by the joint trial because the jury improperly used the evidence against Hershberger to convict Myers. *Id*.

"Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). "As a general policy, joint trials are encouraged when judicial economy would be promoted by avoiding the expensive and time-consuming duplication of evidence."

*Commonwealth v. Jones*, 668 A.2d 491, 501 (Pa. 1995); *see also Commonwealth v. Serrano*, 61 A.3d 279, 285 (Pa. Super. 2013). "A defendant requesting a separate trial must show real potential for prejudice rather than mere speculation." *Serrano*, 61 A.3d at 285 (citation omitted). "The defendant bears the burden of proof, and we will only reverse a decision not to sever if we find a manifest abuse of discretion by the trial court." *Id*. (citation omitted).

> Assuming that the joinder of separate … defendants is proper, … three factors [are] persuasive in determining whether prejudice suffered by the defendants on trial is sufficient to warrant severance:
>
> (1) Whether the number of defendants or the complexity of the evidence as to the several defendants is such that the trier of fact probably will be unable to distinguish the evidence and apply the law intelligently as to the charges against each defendant; (2) Whether evidence not admissible against all the defendants probably will be considered against a defendant notwithstanding admonitory instructions; and (3) Whether there are antagonistic defenses.

*Commonwealth v. Brookins*, 10 A.3d 1251, 1256 (Pa. Super. 2010) (citation omitted); *see also Commonwealth v. Lambert*, 603 A.2d 568, 573 (Pa. 1992) (stating that "[s]eparate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice.").

Here, Myers was not prejudiced by being tried jointly with co-defendant Hershberger. Myers and Hershberger were charged with similar

crimes based upon their commission of a series of burglaries, which occurred within hours of each other and within a relatively close proximity. Indeed, Myers was charged as Hershberger's accomplice in the burglaries. **See generally Commonwealth v. Birdsong**, 24 A.3d 319, 336 (Pa. 2011) (stating that where defendants are charged with conspiracy, there is a strong preference for joint rather than separate trials). The evidence against Hershberger formed part of the "natural development" of the facts and history of Myers's case. **See Serrano**, 61 A.3d at 286 (stating that the trial court properly held a joint trial where the evidence presented against appellant's co-defendant formed part of the "natural development" relating to the facts and history of appellant's case).

Moreover, Myers would have faced the same evidence in a separate trial. **See Commonwealth v. Childress**, 680 A.2d 1184, 1187 (Pa. Super. 1996) (stating that where crimes grow from the same acts and much of the same evidence is necessary or applicable to all defendants, a joint trial is preferred); **see also Serrano**, 61 A.3d at 286. Contrary to Myers's assertions, the record reveals that the evidence adduced at trial did not conflict concerning the roles of each defendant, nor was the jury required to believe Myers over Hershberger. Myers simply argues that the Commonwealth failed to prove that he committed the burglaries, and blames Hershberger for the burglaries. Thus, it cannot be argued that their defense

strategies were antagonistic, and the Motion for severance was properly denied.

In his second claim, Myers contends that the trial court erred in denying his Motion to sever the Criminal Informations against him. Brief for Appellant at 10. Myers argues that the evidence of each of the burglaries would have been inadmissible in a separate trial for each Criminal Information. *Id*. at 11-12. Myers asserts that the actors burglarized the buildings by prying open a door, which was not a unique method. *Id*. Myers also claims that there was no evidence to suggest that the same instruments were used to break into the buildings, that there was any link between the burglaries, or that Myers was linked to the items found at Hershberger's home or Hershberger's father's home. *Id*. at 12-13. Myers additionally argues that the evidence demonstrating that different officers found the recovered items in different places enabled the jury to cumulate the evidence from one crime to another. *Id*. at 13. Myers contends that he was prejudiced by the joinder of the Criminal Informations, as there was no evidence that he entered any of the buildings. *Id*. at 13-14.

"In reviewing a trial court['s] decision to consolidate or to sever offenses for trial, our standard is abuse of discretion." ***Commonwealth v. Kunkle***, 79 A.3d 1173, 1190 (Pa. Super. 2013) (citation omitted). "Offenses charged in separate indictments or informations may be tried together if ... the evidence of each of the offenses would be admissible in a

separate trial for the other and is capable of separation by the jury so that there is no danger of confusion, [or] the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1). However, the trial court may order separate trials for offenses if it appears that the defendant may be prejudiced by consolidation. Pa.R.Crim.P. 583; *see also Commonwealth v. Ferguson*, 107 A.3d 206, 210 (Pa. Super. 2015) (stating that "[t]he prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.").

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the [trial] court must ... determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Serrano*, 61 A.3d at 285 (citation omitted).

Instantly, Myers was charged with three burglaries, which occurred within hours of each other. The cases involved similar government buildings wherein the perpetrators entered or attempted to enter by prying open the doors. N.T., 2/16/15, at 48-50, 53, 55, 59-60, 109, 111-14, 118-21, 128-32, 141, 145, 185-86, 190-91. The evidence indicated that Myers and Hershberger left Myers's mother's home around midnight and came home

with radios matching those stolen from the South Fork Fire Department. N.T., 2/17/15, at 15-18, 20-23, 33-35, 98; N.T., 2/16/15, at 120, 123-25. Further, Dryzall testified that Myers and Hershberger told her that they got the radios from the "fire hall," and that they had a "problem with the first place" so they went to the "second place." N.T., 2/17/15, at 31-32. While some items from the burglaries were found at Hershberger's and Hershbergers' father's homes, evidence of each of the burglaries would be admissible in a prosecution for the other, as the evidence constitutes a "chain or sequence of events that formed the history of the case, [and] is part of the natural development of the case." *Commonwealth v. Drumheller*, 808 A.2d 893, 905 (Pa. 2002).

Additionally, the evidence was easily separable by the jury as different incidents that gave rise to different crimes at different buildings. *See Ferguson*, 107 A.3d at 211 (stating that "[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence.") (citation omitted); *see also id*. (noting that there was no risk of confusing the jury when consolidating the informations where the robberies occurred at different locations and involved different victims).

Finally, Myers has not established undue prejudice by the consolidation of the Criminal Informations for trial. Accordingly, the trial court did not abuse its discretion in consolidating the Criminal Informations for trial. *See*

*id*. at 211-12 (concluding that the trial court did not abuse its discretion in consolidating the informations where appellant committed three armed robberies at separate bars over the period of a month).

We will address Myers's next five claims together as they all involve the sufficiency of the evidence. In his third claim, Myers contends that the evidence was insufficient to support his burglary[4] convictions. Brief for Appellant at 14. Myers argues that the Commonwealth did not present evidence that he entered the Summerhill Borough Municipal Building, the storage building at Summerhill Borough Fire Department, or the South Fork Fire Department. *Id*. at 14, 15. Myers asserts that there was no evidence of anyone fleeing the scene or eyewitnesses placing Myers at the scene of the burglaries, fingerprints found at the buildings, or Myers possessing tools to break into the buildings. *Id*. at 16-17. Myers further asserts that there was no evidence that he possessed the stolen items. *Id*. at 17-18. Myers claims that Dryzal's testimony regarding the radios with stickers similar to items from the South Fork Fire Department was, alone, insufficient to support a burglary conviction. *Id*. at 17.

---

[4] "A person commits the offense of burglary if, with the intent to commit a crime therein, the person … enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S.A. § 3502(a)(4).

In his fourth claim, Myers contends that the evidence was insufficient to support his theft by unlawful taking[5] convictions. *Id*. at 18. Myers argues that there was no evidence that he took or exercised control over movable property from the Summerhill Borough Municipal Building or the South Fork Fire Department. *Id*. at 18, 20. Myers asserts that Hershberger possessed stolen items and tried to sell a stolen coffeemaker. *Id*. at 20.

In his fifth claim, Myers contends that the evidence was insufficient to support his criminal mischief to tangible property[6] convictions. *Id*. at 21, 23. Myers argues that there was a lack of evidence to demonstrate that he caused damage or tampered with property at the South Fork Fire Department or the storage building at the Summerhill Borough Fire Department. *Id*. at 21, 22-23.

In his sixth claim, Myers contends that the evidence was insufficient to support his receiving stolen property[7] convictions. *Id*. at 24, 27. Myers argues that the Commonwealth did not present any evidence that he received, retained, or disposed of property belonging to Summerhill Borough

---

[5] "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

[6] "A person is guilty of criminal mischief if he … intentionally damages real or personal property of another[.]" 18 Pa.C.S.A. § 3304(a)(5).

[7] "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a).

- 12 -

Municipal Building or South Fork Fire Department. *Id*. at 24, 25-26. Myers asserts that he did not have constructive or joint constructive possession of the stolen items as the items were only found at Hershberger's and Hershberger's father's homes. *Id*. at 25-26.

In his seventh claim, Myers contends that the evidence was insufficient to support his criminal attempt (burglary)[8] conviction. *Id*. at 27. Myers argues that the Commonwealth did not present any evidence that he took a substantial step toward the commission of a burglary. *Id*. at 27, 29-30.

> We consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The jury was free to believe all, part or none of the evidence. This Court may not weigh the evidence or substitute its judgment [f]or that of the factfinder.

*Commonwealth v. West*, 937 A.2d 516, 523 (Pa. Super. 2007) (citation and brackets omitted). Further, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–26 (Pa. Super. 2016) (citation omitted).

"A person is legally accountable for the conduct of another person when ... he is an accomplice of such other person in the commission of the

---

[8] "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

offense." 18 Pa.C.S.A. § 306(b)(3); *see also Commonwealth v. Gross*, 101 A.3d 28, 35 (Pa. 2014) (stating that accomplice liability does not create a separate crime, but rather seeks to hold an accomplice equally liable for the conduct of the principal). A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it[.]" 18 Pa.C.S.A. § 306(c)(1).

"Absence or presence at the scene and the participant's role in the complicity are not dispositive of whether accomplice liability exists." *Gross*, 101 A.3d at 35. "There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so." *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004). "With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime." *Id*. Unlike conspiracy, accomplice liability does not require proof of an agreement. *Commonwealth v. Adams*, 39 A.3d 310, 324 (Pa. Super. 2012). Additionally, accomplice liability is offense-specific, meaning that the Commonwealth must prove accomplice liability for each criminal charge to which it applies. *Commonwealth v. Knox*, 105 A.3d 1194, 1196-97 (Pa.

2014). Finally, accomplice liability may be established through purely circumstantial evidence. **Murphy**, 844 A.2d at 1234.

The evidence, viewed in a light most favorable to the Commonwealth, established that on February 16, 2014, the police arrived at the Summerhill Borough Fire Department and Summerhill Borough Municipal Building, and determined that the perpetrators had entered the municipal building and a storage building next to the fire department by prying open the doors. N.T., 2/16/15, at 48-50, 53, 55, 59-60, 111-14, 128-32, 185-86, 190-91; **see also id**. at 83-84, 146-47 (wherein witnesses detail the amount of damages caused by the break-ins). The perpetrators took numerous items from the buildings, including copper wire, a drill, a Keurig coffee maker, portable radios and chargers, and gas cans. **Id**. at 67-70, 72-78, 101-05, 191. The perpetrators had also attempted to access the fire department, but were unable to pry open the door. **Id**. at 56, 58-59, 191. Further, the perpetrators additionally pried the door open at South Fork Fire Department, rummaged through various emergency vehicles and stole, *inter alia*, radios which were countywide service radios used by police, fire, and EMS, a digital video recorder, and a 32-inch Vizio television. **Id**. at 109, 112-14, 118-21, 128-32, 141, 145; **see also id**. at 116-17 (wherein Mark Wadsworth, president of the South Fork Fire Department, testified that the radios were important because the department used them extensively to keep track of personnel).

Dryzal testified that Myers and Hershberger were at Myers's mother's home in South Fork on the night in question. N.T., 2/17/15, at 15, 16-17. Dryzal stated that Myers and Hershberger left the home together around midnight and returned a couple of hours later. *Id*. at 17-18, 23. Upon returning, Myers and Hershberger possessed a bag that they placed in Myers's bedroom until his mother left the home. *Id*. at 18-19, 41. Thereafter, Myers and Hershberger opened the bag. *Id*. at 19. Dryzall stated that the bag contained about four radios, with yellow stickers on them, chargers, and a digital recording device. *Id*. at 21, 23, 33. Dryzall indicated that Myers and Hershberger removed the stickers from the radios and each kept one radio on their person. *Id*. at 22, 34-35. Further, Myers and Hershberger indicated that they got the radios from the "fire hall," and that they had a "problem with the first place" so they went to the "second place." *Id*. at 31-32. Dryzall also stated that she subsequently left Myers's mother's home with Hershberger to sell a television. *Id*. at 33.

The police found items from the Summerhill Borough and South Fork burglaries at Hershberger's father's and Hersberger's homes. *Id*. at 56-57; N.T., 2/16/15, at 193-95, 213-15. The evidence additionally indicated that the radios found at Hershberger's home matched those stolen from the South Fork Fire Department. N.T., 2/17/15, at 98; N.T., 2/16/15, at 120, 123-25. Further, Justin Thomas testified that Hershberger attempted to sell

him a Keurig coffee maker a couple of weeks after the burglaries. N.T., 2/17/15, at 11.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient evidence for the jury to find Myers guilty of the above-mentioned crimes as an accomplice of Hershberger. Indeed, the evidence demonstrated that the perpetrators broke into three separate buildings, the South Fork Fire Department, a storage building at the Summerhill Borough Fire Department and the Summerhill Borough Municipal Building, and attempted to break into the Summerhill Borough Fire Department building by prying open the doors. The evidence additionally demonstrated that Myers and Hershberger together left Myers's mother's home around midnight, and indicated to Dryzall that they took radios from the "fire hall" after they had encountered problems at the "first place." While some of the items stolen from the buildings were found at Hershberger's and his father's home, Myers was an active participant in the criminal enterprise, and was criminally responsible for actions of Hershberger as an accomplice. *See Murphy*, 844 A.2d at 1237 (noting that a reasonable inference of guilt may be made where the evidence, viewed in a light most favorable to the Commonwealth, establishes that the inference is more likely than not); *see also Gross*, 101 A.3d at 35 (stating that "even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish

complicity."). Thus, because Myers was Hersberger's accomplice, Myers was legally responsible for Hershberger's crimes, and the evidence is sufficient to support Myers's convictions. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1024 (Pa. Super. 2002) (concluding that appellant was legally responsible for his co-defendant's crimes where appellant acted as an accomplice to his co-defendant by driving his co-defendant to the scene of the burglary, and leaving the scene of the crime with the co-defendant); *Commonwealth v. Calderini*, 611 A.2d 206, 209 (Pa. Super. 1992) (stating that while there was no direct evidence placing the appellant at the scene of the robbery, "the evidence that he was driving the getaway car a short time after the robbery, that he falsely identified himself to police, and that he had in his possession fruits of the robbery, was sufficient to establish circumstantially that appellant was an accomplice in the commission of the robbery.").

In his final claim, Myers contends that the trial court imposed an illegal sentence by failing to merge his receiving stolen property and theft sentences with his burglary sentences. Brief for Appellant at 30. Myers argues that a person may not be sentenced for both burglary and for the offense that he intended to commit after the illegal entry, unless the additional offense is a felony of the first or second degree. *Id*. at 31. Myers points out that his theft by unlawful taking and receiving stolen property convictions were graded as felonies of the third degree at docket numbers

1262-2014 and 1270-2014. *Id*. at 31, 32. Myers asserts that his sentence must be vacated, as the trial court imposed consecutive sentences of one to two years for the burglary and theft by unlawful taking convictions, and no further penalty for the receiving stolen property convictions at each of the docket numbers. *Id*. The Commonwealth concedes that these sentences are illegal. Brief for the Commonwealth at 17-18.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Nero**, 58 A.3d 802, 806 (Pa. Super. 2012) (citation omitted).[9]

The Crimes Code states that "[a] person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree." 18 Pa.C.S.A. § 3502(d). "Conviction for the purposes of 18 Pa.C.S.A. § 3502(d) refers not to the verdict but to the judgment of sentence." **Commonwealth v. Couch**, 731 A.2d 136, 144 (Pa. Super. 1999). Thus, a person cannot be sentenced separately for both burglary and the crimes that he intended to commit while within the building. *Id*.; **see also Commonwealth v.**

---

[9] We note that Myers failed to raise his claims in his Rule 1925(b) Concise Statement. However, claims pertaining to the legality of sentence are non-waivable and may be raised for the first time on appeal even if the appellant failed to include the issue in his Rule 1925(b) concise statement. **See Commonwealth v. Foster**, 960 A.2d 160, 163 (Pa. Super. 2008).

*Clarke*, 70 A.3d 1281, 1284 (Pa. Super. 2013) (stating that in construing statutes, courts must ascertain the intent of the legislature, "a task that is best accomplished by considering the plain language of the statutes at issue.") (citation omitted).

Here, at docket numbers 1262-2014 and 1270-2014, the trial court sentenced Myers on both burglary as a felony of the second degree, and theft by unlawful taking, as a felony of the **third** degree. Based on the plain language of section 3502(d), Myers should not have received a separate sentence for theft by unlawful taking, at either docket number, because these sentences both merge with burglary for sentencing purposes. *See* 18 Pa.C.S.A. § 3502(d); *Commonwealth v. Tessel*, 500 A.2d 144, 151 (Pa. Super. 1985) (stating that "while a defendant may be charged with and adjudged guilty of both burglary and theft, he may not be sentenced for both crimes."); *see also Commonwealth v. Diaz*, 867 A.2d 1285, 1286 (Pa. Super. 2005) (noting that sentence for theft should have merged with the burglary sentence). Thus, the trial court committed legal error in the imposition of Myers's sentence. Because this conclusion upsets the overall sentencing scheme of the trial court, we must vacate the sentence and remand for resentencing. *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006) (stating that "[i]f our disposition upsets the overall

sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan.").[10]

Myers additionally contends that his sentences for burglary and attempted burglary at docket number 1261-2014 should have merged. Brief for Appellant at 30, 32. Myers argues that the two buildings at the Summerhill Borough Fire Department collectively constitute the fire department, and thus the attempt to break into the main building was a lesser-included offense to the successful entry of the storage building. *Id*. at 32. Myers asserts that the storage building was a "separately secured portion" of the main building, and that the offenses occurred at the same time. *Id*. at 32-33. Myers claims that the sentences must merge and his sentences must be vacated. *Id*. at 33.

> Section 9765 of the Pennsylvania Sentencing Code provides as follows regarding the merger of crimes for sentencing purposes:
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes

---

[10] Here, at docket numbers 1262-2014 and 1270-2014, Myers was convicted of both burglary as a felony of the second degree, and receiving stolen property, as a felony of the **third** degree. However, during sentencing, the trial court did not impose any sentence for the receiving stolen property conviction. Nevertheless, because we are remanding for re-sentencing, we note that based on the plain language of the Crimes Code, any sentence for burglary and receiving stolen property in this case should have merged for sentencing purposes. **See** 18 Pa.C.S.A. § 3502(d); **see also Commonwealth v. Benedetto**, 462 A.2d 830, 832 (Pa. Super. 1983) (holding that "receiving stolen property should have merged with burglary for sentencing purposes.") (citation omitted).

> merge for sentencing purposes, the court may sentence the defendant only on the higher[-]graded offense.
>
> 42 Pa.C.S.[A.] § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. **_Id_**.

**_Commonwealth v. Jenkins_**, 96 A.3d 1055, 1056 (Pa. Super. 2014).

> If the offenses stem from two different criminal acts, merger analysis is not required. In this regard, the threshold question is whether [a]ppellant committed one solitary criminal act. The answer to this question does not turn on whether there was a "break in the chain" of criminal activity. Rather, the answer turns on whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime. If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from receiving a "volume discount on crime."

**_Commonwealth v. Orie_**, 88 A.3d 983, 1020 (Pa. Super. 2014) (brackets, citations, and some quotation marks omitted, brackets added).

Here, Myers committed separate criminal acts at two separate buildings of the Summerhill Borough Fire Department. Specifically, he attempted, but failed to enter the main fire department building. N.T., 2/16/15, at 56, 58-59, 191. Thereafter, he entered a storage building next to the main fire department building. **_Id_**. at 55, 59, 185, 191. Although the time between the separate acts was relatively short and the storage building was used by the fire department, each time, Myers reformulated the intent to enter a building for criminal purposes. Thus, Myers is not entitled to a "volume discount" for his crimes simply because he managed to accomplish

all of the acts within a relatively short period of time, at two separate buildings that constituted the Summerhill Borough Fire Department. **See Orie, supra**. Accordingly, Myers's merger claim in this regard is without merit.

Based upon the foregoing, we affirm Myers's convictions, vacate his sentence, and remand for resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2016